UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | |
| | : | Case No. 03-CR-0331(11) (CKK) |
| WALDEMAR LORENZANA, | : | |
| | : | |
| *Defendant.* | : | |

## DEFENDANT'S MOTION FOR LIVE WITNESSES AT SENTENCING

Defendant Waldemar Lorenzana ("Lorenzana"), by and through undersigned counsel, respectfully moves this Court to require the government to present live witnesses at sentencing. In support of this Motion, Mr. Lorenzana states as follows:

## BACKGROUND

On September 5, 2019, the government informed the Court and the defense that it would seek the application of certain sentencing enhancements against Mr. Lorenzana. In particular, the government seeks a four-level enhancement for leadership and a two-level enhancement for use of an aircraft. The government proposed to support those enhancements with sentencing memoranda and factual proffers. Mr. Lorenzana requested that the Court direct the government to produce live witnesses in support of those enhancements. The same day, the Court issued an Order finding that "in lieu of live witnesses, the Government may rely upon trial testimony from Mr. Lorenzana-Lima's codefendants in support of its recommended sentencing enhancements for leadership and use of aircraft." Order, Sept. 5, 2019, at 2. The codefendants' trial referred to by the Court is one at which Mr. Lorenzana did not participate, did not attend, and at which his counsel did not have a role, such as cross-examining the witnesses upon which

the government will rely.  Furthermore, Mr. Lorenzana does not have access to the *Jencks* material pertaining to the proposed witnesses.

The presentence report (PSR) accepts the government's version of events and assesses Mr. Lorenzana a four-level enhancement for role and a two-level enhancement for use of an aircraft.  The PSR calculates his offense level as 41 and his criminal history category as I, resulting in a guideline sentencing range of 324 – 405 months (27 – 33 ¾ years).  Without the enhancement, Mr. Lorenzana is at an offense level of 35 resulting in a guideline sentencing range of 168 – 210 months (14 – 17 ½ years).  Therefore, the proposed enhancements result in a possible sentence **increase of approximately 14 – 16 years**.

## ARGUMENT

District judges have an "independent obligation to ensure that the sentence was supported by sufficient reliable evidence." *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999).  Sentencing may not depend on "misinformation of constitutional magnitude." *United States v. (Forrest) Tucker*, 404 U.S. 443, 447 (1972). *See also Gardner v. Florida*, 430 U.S. 349, 358 (1977) ("the sentencing process ... must satisfy the requirements of the Due Process Clause"); *United States v. Chase,* 499 F.3d 1061, 1070 (9th Cir. 2007); *United States v. Jordan*, 256 F.3d 922, 926 n.2 (9th Cir. 2001); *United States v. Brothers*, 75 F.3d 845, 848 (3rd Cir. 1996);*United States v. Hanna*, 49 F.3d 572, 577 (9th Cir 1995). Accordingly, "[t]he Guidelines admonish that, although the sentencing court may rely on evidence that would be inadmissible at trial, the evidence must nonetheless have 'sufficient indicia of reliability to support its probable accuracy.'"  *United States v. Bras*, 483 F.3d 103, 109 (D.C. Cir. 2007) (citing U.S.S.G. § 6A1.3).

The Government must produce reliable information supporting a proposed enhancement before the defense must come forward with evidence refuting it. *United States v. Bapack*, 129 F.3d 1320, 1324 (D.C. Cir. 1997) ("At sentencing, it is the Government's burden to demonstrate by a fair preponderance of the evidence that an enhancement is warranted."); *United States v. Bacallo*, 149 F.3d 717, 720 n.2 (7th Cir. 1998) (vacating sentence imposed following plea). In turn, the trial judge must administer an even-handed sentencing proceeding. Properly administered, "[g]uideline sentencing is an adversarial process [which] envisions a confrontation between the parties similar to that which occurs at a civil bench trial." *United States v. Scroggins*, 880 F.2d 1204, 1209 (11th Cir.1989).

### A.  The Court's Proposed Procedure Violates Mr. Lorenzana's Rights of Due Process and Confrontation

Here, the Court proposes that the government move forward in proving the enhancements on the strength of transcripts from the trial of Mr. Lorenzana's sons, a trial in which neither Mr. Lorenzana nor his counsel played a part, such as in cross-examining the relevant witnesses. Although the witnesses were cross-examined at trial, the attorneys who cross-examined them were protecting the interests of their clients, not Mr. Lorenzana's. Additionally, they had the benefit of reviewing the witnesses' *Jencks* material in preparation for cross-examination.

The Court's Order states that "[t]o ensure that Defendant is provided with the opportunity to challenge such evidence, the Government shall provide this Court and counsel for Defendant with a motion in support of its recommended sentencing enhancements, accompanied by a copy of the trial transcript excerpts on which it intends to rely." Order at 2. Although this procedure places a veneer of fairness on the sentencing process, it is far from fair or just. The

proposed process of relying on the trial transcript of Mr. Lorenzana's sons, denies Mr. Lorenzana the opportunity to cross-examine the government's witnesses, to make objections to evidence and the protection of procedural guarantees of a trial that were afforded his sons who confronted the witnesses. *See, e.g., United States v. Castellanos*, 882 F.2d 474, 476 (11th Cir. 1989). In sum, the Court's proposed procedure denies Mr. Lorenzana his Constitutional right to confront witnesses against him and of due process. This is specially so when the proposed enhancements will result in an increase of 14 – 16 years to his sentence.

> B.  **The Proposed Testimony is Inherently Unreliable**

Where courts do not carefully assess the credibility of sources of questionable reliability, the seeds of error are present. *See, e.g., McGowan*, 668 F.3d at 606-09; *United States v. Jimenez-Martinez*, 83 F.3d 488, 494-95 (1st Cir. 1996); David Debold, ed., PRACTICE UNDER THE FEDERAL SENTENCING GUIDELINES, § 8.03[B] at p. 8-54 (supp. 2014). The cooperators' claims made here were of an archetype that courts have long found untrustworthy. *United States v. Magana-Olvera*, 917 F.2d 401, 409 (9th Cir. 1990). There is a "time-honored teaching that a co-defendant's confession inculpating the accused is inherently unreliable." *Lee v. Illinois*, 476 U.S. 530, 546 (1986); *United States v. Pimental-Lopez*, 828 F.3d 1173, 1178-79 (9th Cir. 2016).

"Due to a co-conspirator's 'strong motivation to implicate the defendant,'" courts recognize that co-conspirators' statements about the defendant's involvement in the crime should be viewed with "'special suspicion.'" *United States v. Gomez-Lemos*, 939 F.2d 326, 330 (6th Cir. 1991) (quoting *Lee v. Illinois*, 476 U.S. at 541). "[B]ecause of the perverse and mercurial nature of the devils with whom the criminal justice system has chosen to deal, each contract for testimony is fraught with the real peril that the proffered testimony will not be truthful, but

4

simply factually contrived to 'get' a target of sufficient interest to induce concessions from the government." *Northern Marianas Islands v. Bowie*, 243 F.3d 1109, 1124 (9th Cir. 2001).

Plainly each of the cooperators here may very well have been hoping to curry favor with the Court and government by implicating Mr. Lorenzana. Moreover, since each cooperator was awaiting sentencing, "[t]he fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." *Williamson v. United States*, 512 U.S. 594, 598 (1994). Here, the cooperators at issue clearly had a motive to ingratiate themselves with the government and the Court. For example, Byron Linares, a key member of the conspiracy was recently sentenced to 84 months in prison. Similarly, Otto Herrera received two sentence reductions and a sentence of approximately 77 months. Both sentences, in exchange for cooperation, are far from the overly harsh sentence the government seeks for Mr. Lorenzana.

  C. **Dependence entirely on hearsay and sometimes multiple levels of hearsay enhances the likelihood of error in sentencing.**

Out-of-court statements containing multiple hearsay also have the potential to erode due process rights, as the District of Columbia Circuit recognized in *Singletary v. Reilly*. 452 F.3d 868, 871-75 (D.C. Cir. 2006); *United States v. Lloyd*, 566 F.3d 341, 343 (3rd Cir. 2009) (parole revocation) (citing *Fennell*, 65 F.3d at 813); *Farrish v. Mississippi State Parole Board*, 836 F.2d 969, 978 (5th Cir.1988) ("use of ...unreliable hearsay undermines the accuracy of the fact-finding process" where crucial testimony was provided by officer's recounting informant's "self- serving" statements). When hearsay from cooperators with highly questionable credibility itself includes hearsay from yet other sources the likelihood of error increases. An example of that is *United States v. Cammisamo*. There three FBI agents asserted at sentencing that FBI files

had yielded wiretapped evidence of other crime figures discussing the defendant's ordering a murder and of two informants claiming he was a Mafia "under boss" who engaged in various bombings and murders, and "had a leadership role in the Kansas City organized crime organization." *Cammisamo*, 917 F.2d at 1061. "The government argued that each confidential informant corroborated the other, and 'therefore, it [was] unlikely that this [was] just a mere fantasy of the government or just total speculation on behalf of these confidential sources.'" *Id.*, 917 F.2d at 1062. The Eighth Circuit found that "this is merely 'hearsay upon hearsay upon hearsay' and does not 'constitute sufficiently reliable or credible evidence to support the conclusion that defendant[]was connected to organized crime." *Cammisamo*, 917 F.2d at 1062 (citation omitted).

Here, the proposed transcripts are replete with instances of the witnesses testifying about what others said – a classic example of hearsay within hearsay. That the Court may have been able to observe the witnesses at trial does not inform their testimony against Mr. Lorenzana because he never had the opportunity to confront them.

In sum, simply allowing transcripts from a trial of co-defendants to support the government's proposed sentencing enhancements robs Mr. Lorenzana of an opportunity to properly defend himself at sentence because he never had the opportunity to cross-examine the witnesses or even review the *Jencks* declarations underlying their testimony. In effect, Mr. Lorenzana is left to confront piece of paper in a process that can result in a sentence increase of 14 – 16 years.

WHEREFORE, for all the foregoing reasons, and any others that may appear to the Court, Mr. Lorenzana respectfully requests that this Motion be **GRANTED**.

Dated: Washington, DC
September 29, 2019           Respectfully submitted,

**BALAREZO LAW**

By: /s/
_____
A. Eduardo Balarezo, Esq.
D.C. Bar # 462659
400 Seventh Street, NW
Suite 306
Washington, DC 20004
Tel (202) 639-0999
Fax (202) 639-0899
E-mail aeb@balarezolaw.com

*Counsel for Waldemar Lorenzana*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 29th day of September 2019, I caused a true and correct copy of the foregoing Defendant's Motion for Live Witnesses at Sentencing to be delivered to the parties in this matter via Electronic Case Filing.

/s/
_____
A. Eduardo Balarezo